UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

HECTOR DOMINGUEZ-GABRIEL,

                  Petitioner,

v.

STEPHEN SPAULDING,

                  Respondent.

_____/

Case No. 1:21-cv-217

Honorable Paul L. Maloney

**OPINION**

       This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241.
The action was initially filed in the United States District Court for the District of Massachusetts,
the district within which Petitioner was incarcerated at the time he filed his petition.  Petitioner has
since been transferred to the Federal Bureau of Prisons North Lake Correctional Facility in
Baldwin, Michigan.  The Massachusetts District Court transferred the petition to this Court.
Petitioner raises the following claim:

> I.     When the sentencing court convert[ed] laundered money into drugs for
> purposes of calculating an offense level, it violat[ed Petitioner's] right to a
> trial by jury and denie[d] his constitutional right to compulsory process by
> refusal to produce the allege[d] witness.

(Pet., ECF No. 1, PageID.5.)

       A court must promptly order an answer or grant the writ under § 2241, "unless it
appears from the application that the applicant or person detained is not entitled thereto."  28
U.S.C. § 2243.  After undertaking the review required by § 2243, the Court concludes that the
petition must be dismissed, because Petitioner fails to demonstrate entitlement to relief under
§ 2241, because his claims do not fall within the savings clause of 28 U.S.C. § 2255(e).

## Discussion

### I.     Background

On December 14, 2010, following a seven-day jury trial in the United States District Court for the Southern District of New York, Petitioner was convicted of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), conspiracy to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846, and conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. § 963.  On August 18, 2011, the court sentenced Petitioner to concurrent prison terms of 240 months for conspiracy to launder money, 120 months for conspiracy to distribute cocaine, and 120 months for conspiracy to import cocaine.

Petitioner appealed his convictions and sentences to the Second Circuit Court of Appeals, raising several issues.  He specifically argued the following:

> The District Court in this case should have varied lower than the 20-year sentence it imposed because it relied on certain facts that were suspect, and not proven at trial beyond a reasonable doubt, nor at sentencing by a Preponderance of the evidence standard.  For example, the $1 Million Dollar [sic] that Angel Sanchez was allegedly caught with, was used to calculate Mr. Dominguez's guideline range by using an equivalent scale conversion from money to drugs.  No direct evidence was adduced at trial or at sentencing that [c]onnects Mr. Dominguez with Angel Sanchez's money bust in relation to the $1 Million seized.  This money was converted to 66.6 Kilograms of cocaine in order to affect Mr. Dominguez's base offense level.  [S]ee Sent. Tr. at 33-34.  This is a serious conversion, because it set the guidelines calculation significantly higher than it would have, absent the $1 Million dollar conversion, which in turn affected the departure by the District Court.

> No evidence was introduced to prove that the $1 Million seized from Angel Sanchez was drug proceeds, and that it came from Mr. Dominguez.  In short, this court should reverse the district court's findings of alleged facts supporting the conversion of the $1 Million dollars seized from Angel Sanchez.  The court was in doubt as to whether Angel Sanchez really existed, and whether those facts were covered by the indictment.  This court considers these issues as relevant to sentencing in the context of the facts adduced at trial, and the government's failure to produce evidence of connection at sentencing.  It should therefore reverse and remand for a new sentencing hearing directing the District Court to exclude the $1 Million Dollar conversion-or make additional fact findings that support attributing that money to Mr. Dominguez for purposes of sentencing.

2

*United States v. Dominguez-Gabriel et al.*, No. 11-3483 (2d Cir.) (Pet'r's Pro Per Br., Doc. 48 at 57–58).[1]  The Second Circuit Court of Appeals rejected the arguments as meritless.  *United States v. Dominguez-Gabriel*, 511 F. App'x 17, 21 (2d Cir. 2013) *cert. denied sub nom. Dominguez-Gabriel v. United States*, 569 U.S. 999 (2013) ("We have considered Dominguez–Gabriel's remaining challenges, including those he presents *pro se*, and we conclude that they are uniformly without merit . . . .").  Petitioner has also filed multiple collateral attacks against his convictions and sentences, including a motion for new trial, § 2255 motions, motions for sentence reduction, and a motion for compassionate release, to no avail.

On or about October 1, 2019, Petitioner filed the instant habeas corpus petition under § 2241.  Petitioner essentially reargues the claims he made on direct appeal in the Second Circuit—that he is entitled to a jury determination of the facts that support the money-to-drugs equivalence and that he is entitled to compel Angel Sanchez to testify.

## II.    Analysis

Ordinarily, a federal prisoner must challenge the legality of his detention by motion under 28 U.S.C. § 2255 but may challenge the manner or execution of his sentence under 28 U.S.C. § 2241.  *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)).  However, a prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

---

[1] Although Petitioner objects to the trial court's departure from the guidelines, it appears that the departure was a significant downward departure from the range provided by the guidelines.

28 U.S.C. § 2255(e) (emphasis added); *Peterman*, 249 F.3d at 461. Thus, through the § 2255 "savings clause" vehicle, a petitioner may seek habeas relief under § 2241 where he can show that § 2255 provides an "inadequate or ineffective" means for challenging the legality of his detention.

The Sixth Circuit has held that "'[t]he circumstances in which § 2255 is inadequate and ineffective are narrow.'" *Hill*, 836 F.3d at 594 (quoting *Peterman*, 249 F.3d at 461). As the court explained in *Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999), "[t]he remedy afforded under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255." *Id.* at 758 (citations omitted). Section 2255 "is not 'inadequate or ineffective' merely because habeas relief has previously been denied, a § 2255 motion is procedurally barred, or the petitioner has been denied permission to file a successive motion.'" *Hill*, 836 F.3d at 594. Instead, the savings clause applies only where the petitioner also demonstrates "actual innocence," *Peterman*, 249 F.3d at 461–62; *Charles*, 180 F.3d at 757, or "'a subsequent, retroactive change in statutory interpretation by the Supreme Court,'" *Hueso v. Barnhart*, 948 F.3d 324, 332 (6th Cir. 2020) (quoting *Hill*, 836 F.3d at 599–600).

The standard for demonstrating actual innocence, either directly or due to the Supreme Court's interpretation of a statute, is exceedingly high and "ensures that [a] petitioner's case is truly 'extraordinary . . . .'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). "'To establish actual innocence'" for the purposes of § 2255(e), a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Yet, as both the Supreme Court and Sixth Circuit have made clear, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *accord Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012).

4

Petitioner's challenge does not rest on a claim of actual innocence.  His claim challenges only his sentence, not his convictions.  Moreover, Petitioner does not identify any subsequent, retroactive change in statutory interpretation by the Supreme Court that might warrant revisiting his sentence by way of § 2241.

Petitioner's argument challenging the use of judge-found facts that are found by a preponderance of the evidence at sentencing relies on law well-established at the time of Petitioner's sentencing.  Petitioner's suggestion that a jury must find the facts to support the scoring of the sentencing guidelines is premised on the line of cases beginning with *Apprendi*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

A year later, in *Booker*, the Supreme Court applied the *Blakely* reasoning to the federal sentencing guidelines to conclude that the federal sentencing guidelines are subject to the

jury trial requirements of the Sixth Amendment.[2]  One group of five justices concluded that the mandatory application of the federal sentencing guidelines conflicted with the Sixth Amendment. Another group of five justices determined that the appropriate remedy was to make the guidelines advisory, thereby avoiding the legislative mandate that gave rise to the constitutional infirmity. The Sixth Amendment was not offended if a discretionary sentence was based upon judge-found facts.  The Court's remedy of making the guidelines advisory in *Booker* completely undercuts Petitioner's claim that the use of judge-found facts to calculate his guidelines violated the Sixth Amendment.  By the time Petitioner was sentenced in 2011, the guidelines were long-since advisory under *Booker*.  Petitioner's claim, therefore, does not rely on any retroactive changes in the law.

Similarly, Petitioner's claim that his right to compulsory process required that Petitioner be permitted to compel Angel Sanchez to provide testimony at sentencing is properly resolved by reference to cases well-established at the time of his sentencing.  There have been no changes in the law to warrant re-examination under § 2241.

The Supreme Court has never ruled whether a convicted, non-capital defendant, such as Petitioner, has a right of compulsory process to compel witnesses to testify at a sentencing hearing.  The Supreme Court's statements regarding the right of compulsory process generally suggest that it is a trial right.  For example, in *Washington v. Texas*, 388 U.S. 14 (1967) the Court stated:

> The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States.  This Court had occasion in *In re*

---

[2] Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  *Alleyne* was decided after Petitioner's sentence was imposed, but before his various collateral attacks were made.  Moreover, Petitioner's argument does not rely on *Alleyne*, it relies on *Booker*.

*Oliver*, 333 U.S. 257 (1948), to describe what it regarded as the most basic ingredients of due process of law.  It observed that:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."  333 U.S., at 273 (footnote omitted).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury *so [the jury] may decide where the truth lies*.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

*Id.* at 18–19 (emphasis added).  Similarly, in *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Court explained that "[i]n the exercise of this right, the [parties] must comply with established rules of procedure and evidence designed to assure both fairness and reliability *in the ascertainment of guilt and innocence*."  *Id.* at 301–02 (emphasis in original).

The federal courts of appeals have likewise concluded that there is no right to present witnesses at a non-capital sentencing hearing.  Although these courts often consider the issue in the context of determining whether Federal Rule of Civil Procedure 32 provides that right, their analyses clearly presume, and in some instances directly state, that the right is not created by the constitution.  *See, e.g., United States v. Heller*, 797 F.2d 41, 43 (1st Cir. 1986); *United States v. Prescott*, 920 F.2d 139, 143 (2d Cir. 1990); *United States v. Jackson*, 453 F.3d 302, 305–06 (5th Cir. 2006); *United States v. Cunningham*, 883 F.3d 690, 699–700 (7th Cir. 2018); *United States v. Jones*, 643 F.3d 275, 177–78 (8th Cir. 2011); *United States v. Escobedo*, No. 92-30158, 1994 WL 87575, at *7 (9th Cir. Mar. 18, 1994).  Petitioner does not point to any change in the law subsequent to his sentencing hearing that establishes a constitutional right to compel Angel Sanchez to testify at his sentencing.

Petitioner is not entitled to bring a § 2241 challenge to his sentence under the savings clause of § 2255(e). Therefore, the Court does not have subject matter jurisdiction of the petition. *Taylor v. Owens*, __ F.3d __, 2021 WL 868551, at *5 (6th Cir. Mar. 9, 2021).

### <u>Conclusion</u>

The Court will enter a judgment dismissing the petition without prejudice.[3]

Dated:   <u>March 17, 2021</u>        <u>/s/ Paul L. Maloney</u>
                                    Paul L. Maloney
                                    United States District Judge

---

[3] In § 2241 cases, the Court need not address whether to grant a certificate of appealability. *Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).